# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | Civ. A. No. 1:19-cv-00920-LLS |
| Plaintiffs, | Hon. Louis L. Stanton |
| vs. | |
| ALTA MESA RESOURCES, INC. f/k/a SILVER RUN ACQUISITION CORPORATION II, JAMES T. HACKETT, THOMAS J. WALKER, WILLIAM D. GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS and RIVERSTONE INVESTMENT GROUP LLC, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF FIRST NEW YORK GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND <u>APPROVAL OF SELECTION OF LEAD COUNSEL</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................................. 2

FACTUAL BACKGROUND..................................................................................................... 4

ARGUMENT .............................................................................................................................. 6

A.     The PSLRA Standard for Appointing Lead Plaintiff........................................................ 6

B.     The First New York Group Is the "Most Adequate Plaintiff" ........................................... 7

        1.     The First New York Group Has Satisfied the PSLRA's Procedural
            Requirements ............................................................................................................ 7

        2.     The First New York Group Possesses the Largest Financial Interest in the Relief
            Sought by the Class................................................................................................... 8

        3.     The First New York Group Satisfies Rule 23's Typicality and Adequacy
            Requirements ............................................................................................................ 9

        4.     The First New York Group Is Precisely the Type of Lead Plaintiff Envisioned by
            Congress When Enacting the PSLRA................................................................... 11

C.     The Court Should Approve the First New York Group's Choice of Lead Counsel ........ 13

CONCLUSION........................................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bell v. Ascendant Solutions, Inc.*,
No. Civ. A. 3:01-cv-0166, 2002 WL 638571 (N.D. Tex. Apr. 17, 2002) ............................. 13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ...................................................... 12

*In re Facebook, Inc., IPO Sec. and Deriv. Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ................................................ 9, 10

*In re Flight Safety Techs., Inc. Sec. Litig.*,
231 F.R.D. 124 (D. Conn. 2005) ............................................... 12

*In re Oxford Health Plans, Inc., Sec. Litig.,*
182 F.R.D. 42 (S.D.N.Y. 1998) .............................................. 12, 13

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.*,
No. Civ.A. 00-152 (JEI), 2000 WL 486956 (D.N.J. Apr. 24, 2000) ...................... 12

*Levin v. Res. Capital Corp.*,
No. 15-7081 (LLS), 2015 WL 7769291 (S.D.N.Y. Nov. 24, 2015) ........................ 7

*Micholle v. Ophthotech Corp.*,
No. 17-cv-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) .............. 12, 13

**Statutes**

15 U.S.C. § 78j(b) ...................................................................... 2

15 U.S.C. § 78n(a) ..................................................................... 2

15 U.S.C. § 78t(a) ...................................................................... 2

15 U.S.C. § 78u-4(a)(3)(A) ........................................................ 8

15 U.S.C. § 78u-4(a)(3)(B) ..................................................... 1, 7

15 U.S.C. § 78u-4(a)(3)(B)(i) ..................................................... 2

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................... 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................ 2, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) .......................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) .......................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)...........................................................................3, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)...........................................................................13

15 U.S.C. § 78u-4(a)(3)(B)(v)...........................................................................13

15 U.S.C. § 78u-4(a)(l)...........................................................................7

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995),
   *as reprinted in* 1995 U.S.C.C.A.N. 730, 737 ...........................................................................12

**Rules**

17 C.F.R. § 240.10b-5...........................................................................2

17 C.F.R. § 240.14a-9...........................................................................2

Fed. R. Civ. P. 23...........................................................................2, 3, 7, 11

Fed. R. Civ. P. 23(a)...........................................................................9

Fed. R. Civ. P. 23(a)(3)...........................................................................9, 10

Fed. R. Civ. P. 23(a)(4)...........................................................................10

iii

FNY Partners Fund LP, FNY Managed Accounts, LLC and Paul J. Burbach, Jr. (collectively, the "First New York Group") respectfully submit this memorandum of law in support of their collective motion for: (1) appointment as Lead Plaintiff, on behalf of a class consisting of all purchasers of Alta Mesa Resources, Inc. f/k/a Silver Run Acquisition Corporation II ("Silver Run II" or the "Company") securities during the period March 24, 2017 through February 25, 2019, both dates inclusive (the "Class Period"), pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) approval of the First New York Group's selection of Entwistle & Cappucci LLP ("Entwistle & Cappucci") as Lead Counsel for the putative Class; and (3) any such further relief as the Court may deem just and proper.[1]

In support of this motion, the First New York Group has filed concurrently herewith the Declaration of Andrew J. Entwistle (the "Entwistle Declaration"). The First New York Group also bases its motion on the pleadings and other filings and records in the above-captioned action (the "Action") and such other written and/or oral argument as may be presented to the Court.[2]

---

[1] Due to the nature of the PSLRA's Lead Plaintiff application process and deadline, it was not possible for the First New York Group to comply with Section 2.A. of Your Honor's Individual Practices requiring pre-motion conference with the Court prior to filing the instant motion because the identity of necessary parties to such a pre-motion conference is unknown.

[2] In addition to the above-captioned Action, there are two related securities class action cases pending in the U.S. District Court for the Southern District of Texas. *See FNY Partners Fund LP and FNY Managed Accounts, LLC v. Alta Mesa Resources, Inc. f/k/a Silver Run Acquisition Corporation II, et al.*, No. 19-cv-01027 (S.D. Tex.); and *Camelot Event Driven Fund, a Series of Frank Group Trust v. Alta Mesa Resources, Inc. f/k/a Silver Run Acquisition Corporation II, et al.*, No. 19-cv-00957 (S.D. Tex.). The First New York Group is concurrently filing a motion for appointment as Lead Plaintiff in those actions.

## PRELIMINARY STATEMENT

This Action arises out of misstatements and omissions of material facts that Houston-based "blank check" company Silver Run II and certain of its senior executives[3] made to investors during the Class Period, as well as the culpable conduct of Silver Run II's private equity sponsor, Riverstone Holdings, LLC ("Riverstone") (collectively, "Defendants").[4]  The Action, along with the two related actions filed in the Southern District of Texas, variously assert claims under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, as well as Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and SEC Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.  Plaintiffs seek to recover damages caused by Defendants' wrongful conduct.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff for the Class. 15 U.S.C. § 78u-4(a)(3)(B)(i). In selecting the "most adequate plaintiff," the Court is required to determine which movant has the "largest financial interest in the relief sought by the [C]lass" in this Action, and whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be

---

[3] These executives include:  Silver Run II's former Chief Executive Officer ("CEO") Harlan H. Chappelle ("Chappelle"), Silver Run II's Executive Chairman and Co-Head of Riverstone's Houston office James T. Hackett, Silver Run II's former Chief Financial Officer and Riverstone Partner Thomas J. Walker, and Silver Run II directors William Gutermuth, Jeffrey H. Tepper and Diana J. Walters.

[4] On information and belief, the vast majority of the wrongdoing alleged in the above-captioned Action and detailed herein occurred in Houston, Texas, which serves as both the current headquarters and principal place of business of Silver Run II and the former headquarters of Alta Mesa Holdings, LP.  Additionally, the majority of the individual Defendants named in the above-captioned Action reside in Houston.

rebutted only upon "proof" that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of, or is subject to unique defenses that render it incapable of adequately representing, the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The First New York Group respectfully submits that it should be appointed Lead Plaintiff on behalf of the Class.  The First New York Group satisfies all the prerequisites for appointment as Lead Plaintiff.  As detailed below, the First New York Group has the largest financial interest in this litigation as a result of the more than *$3.2 million* in collective losses it incurred on its investments in Silver Run II common stock and warrants.[5]  Accordingly, the First New York Group has a powerful economic interest in directing the litigation and recovering the losses it suffered — an interest believed to be greater than that of any other movant.

The First New York Group also meets the typicality and adequacy requirements of Rule 23 because the claims of its members are typical of absent Class members, and because it will fairly and adequately represent the interests of the Class.  Indeed, the First New York Group is composed of precisely the type of sophisticated investors that Congress intended to lead complex securities class actions.  In short, the First New York Group is the "most adequate plaintiff" and its members should be appointed Lead Plaintiff.

The First New York Group also respectfully requests that the Court approve its choice of Entwistle & Cappucci as Lead Counsel for the Class.  With offices in both New York and Texas, Entwistle & Cappucci is a nationally recognized securities class action firm that has extensive

---

[5] Copies of the Certifications executed by the members of the First New York Group are attached as Exhibits A, B and C to the Entwistle Declaration.  The Certifications set forth all transactions of the First New York Group in Silver Run II securities during the Class Period.  Additionally, calculation of the financial losses sustained by members of the First New York Group are attached as Exhibits D, E and F to the Entwistle Declaration.

experience recovering billions of dollars for the benefit of injured investors, and is eminently qualified to prosecute the Action.

## FACTUAL BACKGROUND

As described more fully in the Complaint filed by FNY Partners Fund LP and FNY Managed Accounts, LLC in the Southern District of New York,[6] members of Riverstone's Houston office formed Silver Run II in 2016 as a blank check company for the purpose of merging with or acquiring an as-yet-unidentified energy business.  ¶¶ 4, 29-34.  At the time of the Company's initial public offering in March 2017 (the "IPO"), Silver Run II did not have any ongoing business or operations.  ¶ 4.  Rather, investors expected to profit from Riverstone's purported expertise, track record, and ability to identify and acquire a "fundamentally sound" energy business.  ¶¶ 37-38.  If Silver Run II failed to acquire a target energy business with an aggregate fair market value of at least 80% of the IPO proceeds held in trust within two years, Silver Run II was obligated to return 100% of the value of its outstanding public shares back to investors.  ¶¶ 5-6, 39.  This structure incentivized Silver Run II and its sponsor, Riverstone, to quickly negotiate, agree to and close a transaction.  ¶¶ 40.

On August 16, 2017, Houston-based Silver Run II announced it had agreed to acquire two related companies, Alta Mesa Holdings, LP ("Alta Mesa"), headquartered in Houston, and Oklahoma-based Kingfisher Midstream LLC ("Kingfisher") (the "Acquisition").  ¶¶ 41, 85. Defendants materially overstated the value of Alta Mesa and Kingfisher by, *inter alia*, failing to disclose:  (i) material operations and business setbacks at Alta Mesa that Defendants subsequently

---

[6] Paragraph of the complaint filed in *FNY Partners Fund LP et al v. Alta Mesa Resources, Inc. f/k/a Silver Run Acquisition Corporation II et al.*, C.A. 4:19-cv-01027 (S.D. Tex.) (the "*FNY* Complaint") are cited herein as "¶__."  The *FNY* Complaint, which is attached as Exhibit G to the Entwistle Declaration, was filed on March 19, 2019 in the Southern District of Texas (*i.e.*, the District where Silver Run II maintains its headquarters, where Riverstone's Houston office formed the Company, and where the majority of the alleged wrongdoing occurred).

*admitted began in 2017*; and (ii) material weaknesses in the Company's internal controls over financial reporting, ultimately resulting in a $3.1 billion write-down of the Company's assets.  ¶¶ 8-9.  These misleading statements were included in Silver Run II's Definitive Merger Proxy Statement issued to the Company's shareholders on Schedule 14A, dated January 19, 2018 (the "Proxy").

On March 29, 2018, Silver Run II issued a press release announcing that EBITDA and production estimates it had provided prior to the close of the Acquisition were materially overstated.  ¶¶ 9, 119, 123.  Defendant Chappelle, then CEO, admitted during the Company's related earnings call that the "setbacks" causing the reduced earnings, such as delayed drilling on acreage served by Kingfisher by multiple large third-party producers, began in "late 2017" – *i.e. before* the Proxy was filed.  ¶¶ 9, 52, 65.

During the first half of 2018, the Company misleadingly attempted to characterize the setbacks as temporary. ¶¶ 11, 70.  However, on August 14, 2018, Silver Run II provided its second quarter 2018 financial results, disclosing even more disappointing numbers – again admitting it did not meet its recently published projections because of defects that began "*back in the fourth quarter of '17*."  ¶¶ 10, 71, 119.  Indeed, despite projections of positive growth, Silver Run II revealed that Alta Mesa's oil production had actually declined during the quarter, largely because the Company's wells had suffered from repeated "shut-ins" resulting from work done in 2017. ¶¶ 10, 70-71, 87, 95, 97, 102, 107, 112, 119, 160.

Silver Run II released its third quarter 2018 financial results on November 13, 2018, in which it projected 2018 EBITDA for Kingfisher to be only $36-38 million – *80% less* than the projection in the January 2018 Proxy issued less than a year prior.  ¶¶ 11, 77, 127-28, 161.  These partial disclosures were accompanied by a stream of executive departures beginning with the

November 2018 "retirement" of the Company's Chief Financial Officer.  ¶¶ 120.  The next month, Silver Run II announced the abrupt departures of Defendant Chappelle and its Vice President and Chief Operating Officer of its Alta Mesa Division.  *Id.*

More recently, on February 25, 2019, the Company filed a notification of inability to timely file its 2018 annual report because of a "material weakness" in its financial reporting, and further announced it was taking the $3.1 billion write down.  ¶¶ 12, 81, 100, 129.  The Company also announced additional operational problems and that its active rig count was reduced to *zero*.

As a result of the foregoing disclosures, the price of Silver Run II's Class A common stock imploded — ***losing over 95% of its value to date***.  ¶¶ 161.

Silver Run II, Riverstone and the individual Defendants were admittedly aware of the facts underlying the post-Acquisition disclosures long before the Proxy was issued.  Nevertheless, they intentionally withheld such information from Silver Run II investors, knowing that if the truth about Alta Mesa and Kingfisher was known investors would not approve the Acquisition, and Riverstone and Silver Run would end up having to return the original investment in Silver Run II to each investor.  Put another way, the holders of Silver Run II Class A common stock on the January 22, 2018 record date (the "Record Date") were fraudulently induced by the misleading Proxy to vote in favor of the Acquisition.  As a result, investors were damaged by approximately $10 per share — the difference between the price paid for the shares and the current share price of less than ***$0.50*** per share.  ¶¶ 14.

## **ARGUMENT**

### A.   **The PSLRA Standard for Appointing Lead Plaintiff**

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action

pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons that has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The presumption that the person or group of persons with the largest financial interest in the relief sought is the "most adequate plaintiff" may be rebutted by a showing that that person or group "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  *See, e.g., Levin v. Res. Capital Corp.*, No. 15-7081 (LLS), 2015 WL 7769291, at \*1 (S.D.N.Y. Nov. 24, 2015) (Stanton, J.) (appointing lead plaintiff in class action that suffered highest estimated losses and otherwise satisfied typicality and adequacy requirements).

**B.**     **The First New York Group Is the "Most Adequate Plaintiff"**

The First New York Group respectfully submits that it is presumptively the "most adequate plaintiff" because it has complied with the PSLRA's procedural requirements, possesses the largest financial interest of any movant and satisfies Rule 23's typicality and adequacy requirements.

**1.**     **The First New York Group Has Satisfied the PSLRA's Procedural Requirements**

The Court's selection of the Lead Plaintiff is limited to those members of the Class who filed a complaint or timely filed a motion for appointment as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).  Members of the First New York Group filed the *FNY* Complaint in the Southern District of Texas and timely file this motion within 60 days of the publication of notice

of the Action.  *See* 15 U.S.C. § 78u-4(a)(3)(A); Entwistle Decl., Ex. H.  Here, the first notice of pendency was published on January 30, 2019, making the deadline for this motion April 1, 2019.

### 2.   The First New York Group Possesses the Largest Financial Interest in the Relief Sought by the Class

The First New York Group should be appointed Lead Plaintiff because it has the largest financial interest in the relief sought by the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  During the Class Period, the First New York Group suffered substantial losses of over ***$3.2 million*** from its transactions in Silver Run II securities.  Specifically, FNY Partners Fund LP incurred a loss of **$2,674,268.34** on its investments in Silver Run II securities, while FNY Managed Accounts, LLC incurred a loss of **$69,725.36**.  *See* Loss Analyses, Entwistle Decl., Exs. D and E.  Additionally, Paul J. Burbach, Jr. incurred an overall loss of **$470,442.17** based on his investments in Silver Run II common stock and warrants.  *See* Loss Analyses, Entwistle Decl., Ex. F.

With respect to the Section 14(a) claims alleged in the Action, as of the January 22, 2018 Record Date, FNY Partners Fund LP held 31,000 shares of Silver Run II common stock and Paul J. Burbach held 9,000 shares.  In total, the First New York Group held 40,000 shares as of the Record Date and was entitled to vote on the Acquisition.

To the best of the First New York Group's knowledge, there are no other movants that have sought, or are seeking, Lead Plaintiff appointment that have a larger financial interest arising from transactions in Silver Run II securities.[7]  Accordingly, the First New York Group has the largest financial interest of any movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

---

[7] The plaintiff in *Camelot* lost approximately $58,795.88.  The plaintiff in the above-captioned Action only disclosed its holdings as of the January 22, 2018 Record Date, which is insufficient to determine the plaintiff's financial interest during the entire Class Period.

### 3.    The First New York Group Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).   Rule 23(a) requires, among other things, that a proposed lead plaintiff: (i) has claims that are typical of those of the class; and (ii) will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).   At the lead plaintiff selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate.   *See In re Facebook, Inc., IPO Sec. and Deriv. Litig.*, 288 F.R.D. 26, 37 (S.D.N.Y. 2012) ("In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.") (citation omitted).   As detailed below, the First New York Group plainly satisfies the typicality and adequacy requirements of Rule 23. As such, the First New York Group is qualified to serve as Lead Plaintiff.

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.   The typicality requirement is satisfied so long as claims arise from a similar course of conduct and share the same legal theory, even when there are factual differences. *Facebook*, 288 F.R.D. at 37 ("However, the claims of the class representative need not be identical to those of all members of the class . . . [t]he possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (citation omitted).

The typicality requirement is satisfied here because the First New York Group is not subject to any unique or special defense and seeks the same relief and advance the same legal theories as other Class members.   Like the other members of the Class, the First New York Group purchased Silver Run II stock and warrants during the Class Period at prices artificially inflated by

Defendants' misrepresentations and omissions and suffered damages as a result.   Moreover, members of the First New York Group held Silver Run II Class A common stock on the January 22, 2018 Record Date and was entitled to vote on the Acquisition.   These shared claims, which arise under a common legal theory and from the same events and course of conduct as those of the other members of the Class, satisfy Rule 23(a)(3)'s typicality requirement.

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when movants establish that they "will fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a)(4).   Adequacy of representation is satisfied when "proposed class counsel is qualified, experienced, and generally able to conduct the litigation; [] the proposed lead plaintiff has interests that are [not] antagonistic to other class members; and [] the proposed lead plaintiff and the other class possess sufficient interest to pursue vigorous prosecution of their claims." *Facebook*, 288 F.R.D. at 37 (citation omitted).

The First New York Group satisfies these elements because its substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class' claims. Indeed, its interests are perfectly aligned with those of the other Class members and are not antagonistic in any way.   There are no facts to suggest any actual or potential conflict of interest or other antagonism between the First New York Group and other Class members.

Finally, the First New York Group has demonstrated its adequacy through its selection of Entwistle & Cappucci as Lead Counsel to represent the Class.   As discussed more fully below, Entwistle & Cappucci is highly qualified and experienced in securities class action litigation, having repeatedly demonstrated an ability to conduct complex securities class action litigation

effectively, particularly in securities matters involving energy company defendants.  Entwistle & Cappucci's investigation into this matter led to its filing of the *FNY* Complaint.

### 4. The First New York Group Is Precisely the Type of Lead Plaintiff Envisioned by Congress When Enacting the PSLRA

In addition to satisfying the requirements of Rule 23, the members of the First New York Group – two sophisticated institutional investors (FNY Partners Fund LP and FNY Managed Accounts, LLC) that are both experienced in acting as fiduciaries, and an experienced investor and business owner (Paul J. Burbach, Jr.) – are precisely the type of investors Congress sought to encourage to assume a more prominent role in securities litigation when it enacted the PSLRA.  In addition to satisfying the requirements of Rule 23, the First New York Group has also demonstrated its commitment to working cohesively in the joint prosecution of this Action.  In this regard, each member of the First New York Group individually determined to jointly seek appointment as Lead Plaintiff and litigate this Action independently of counsel and in the best interests of all Class members.  The First New York Group has already taken measures to ensure the vigorous prosecution of this Action.  Specifically, FNY Partners Fund LP and FNY Managed Accounts, LLC filed a detailed and comprehensive complaint based upon the results of an extensive investigation in this matter.  In addition, all of the members of the First New York Group held a telephonic meeting with each other and with proposed Lead Counsel concerning:  (i) the allegations in the litigation; (ii) the merits of the claims against Defendants and potential recoverable losses; (iii) the PSLRA's lead plaintiff appointment process; (iv) the benefits of a co-leadership structure; and (v) the manner in which the group members plan on working together and making joint decisions.  Accordingly, the First New York Group has established its ongoing commitment to zealously and efficiently represent the interests of the Class as members of a cohesive Lead Plaintiff group.

Congress explained in its PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting H.R. Conf. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 737); *see also Micholle v. Ophthotech Corp.*, No. 17-cv-210 (VSB), 2018 WL 1307285, at *6 (S.D.N.Y. Mar. 13, 2018) ("By enacting the PSLRA . . . Congress sought to increase the likelihood that institutional investors will step forward as the ideal lead plaintiffs in private securities litigation.") (citation omitted).

Moreover, courts in this Circuit and elsewhere have recognized the propriety of appointing both an individual investor and an institution as co-lead plaintiffs to ensure adequate protection of each absent class member's interests.   In this regard, courts have frequently appointed both institutional and individual investors as co-lead plaintiffs to ensure adequate representation of the class.   *See In re Oxford Health Plans, Inc., Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (appointing individual investor and institutional investor as co-lead plaintiffs to ensure diverse representation); *In re Flight Safety Techs., Inc. Sec. Litig.*, 231 F.R.D. 124, 131 (D. Conn. 2005) ("Although there is no apparent preexisting relationship between them outside of the fact that they both were members of the Ozkan Group, the Court exercises its discretion and, acting in the best interests of the purported class members, appoints Pathway Investments as a co-lead plaintiff."); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. Civ.A. 00-152 (JEI), 2000 WL 486956 (D.N.J. Apr. 24, 2000) (noting that it is "desirable to have both an institutional investor [] and individual investors [] included as lead plaintiffs since each may bring a unique perspective to the litigation."); *Bell v. Ascendant Solutions, Inc.*, No. Civ. A. 3:01-cv-0166, 2002

WL 638571 (N.D. Tex. Apr. 17, 2002) (appointing an institution and two individuals as lead plaintiff "improves diversity of experience").  The *Oxford* court stated as follows:

> Allowing for diverse representation, including in this case a state pension fund, significant *individual* investors and a large institutional investor, ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants.

182 F.R.D. at 49 (emphasis added).

The First New York Group is composed of sophisticated institutional investors and an experienced individual investor and business owner with substantial financial stakes in this litigation that have every incentive to vigorously pursue this case and obtain the best possible recovery for the Class.  Appointing the members of the First New York Group would satisfy the PSLRA's aim of having the Class represented by institutional and individual investors each with a significant stake in the outcome of the litigation.

## C.     The Court Should Approve the First New York Group's Choice of Lead Counsel

The PSLRA vests authority in the lead plaintiff to "select and retain lead counsel," subject to this Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v); *Micholle,* 2018 WL 1307285, at *10.[8] Here, the First New York Group has chosen Lead Counsel with extensive experience and a demonstrated history of success in numerous important actions on behalf of injured investors.  Its selection of counsel should be approved.

Entwistle & Cappucci is among the preeminent securities class action law firms in the country, with offices in New York and Texas.  *See* Entwistle Decl., Ex. I.  The Firm has extensive

---

[8] Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

experience successfully prosecuting some of the largest and most complex class actions in history and has distinguished itself as one of the nation's premier complex litigation firms, regularly pursuing multi-jurisdictional cases against well-funded opponents, including large corporations and financial institutions.  The Firm has served in a leadership capacity in some of the highest-profile securities litigation matters in recent years, recovering over $4 billion for its clients and other investors.

Entwistle & Cappucci is uniquely qualified for a leadership position in this matter in light of its recent prosecution of securities claims against oil and gas company Cobalt International Energy, Inc. in the Southern District of Texas.  In that case, Entwistle & Cappucci served as co-lead counsel and recovered $169.35 million in cash, in addition to $220 million payable from director and officer liability policies on behalf of a class of investors.  *See In re Cobalt International Energy, Inc. Securities Litigation*, No. 14-cv-3428 (S.D. Tex.) (Atlas, J.).  Entwistle & Cappucci worked extensively with an oil and gas expert to prosecute the case, including conducting extensive discovery into the falsity of statements regarding Cobalt's oil and gas wells.  *Cobalt* also involved prosecuting claims against sponsor defendants, including Riverstone, which will be particularly relevant to this case.  In addition, Entwistle & Cappucci serves as Lead Counsel in a pending securities class action against energy midstream pipeline company Columbia Pipeline Group, Inc., now part of natural gas giant TransCanada Corporation, also based upon alleged violations of Section 14(a) of the Exchange Act arising from alleged false and misleading statements in a proxy statement concerning a proposed merger.  *See In re Columbia Pipeline, Inc. Securities Litigation*, C.A. No. 1:18-cv-03670 (S.D.N.Y.).  Entwistle & Cappucci's energy-related experience further includes the representation of the State of Florida's energy interests in connection with the Enron bankruptcy and various other oil and gas related matters.

14

Other significant cases in which Entwistle & Cappucci served in a leadership capacity and obtained significant recoveries on behalf of the respective classes include:

(1) *In re MF Global Holdings Ltd. Investment Litigation*, No. 12-md-2338-VM (S.D.N.Y.), in which Entwistle & Cappucci -- appointed Co-Lead Counsel for the worldwide class of commodities investors -- worked with the trustee appointed under the Securities Investor Protection Act ("SIPA") to recover all $1.6 billion in net equity lost by commodity customers after the collapse of MF Global;

(2) *In re Royal Ahold Securities Litigation,* No. 03-md-01539-CCB (D. Md.), in which Entwistle & Cappucci served as Lead Counsel representing the Public Employees' Retirement Association of Colorado as Lead Plaintiff, recovering a $1.1 billion partial settlement of the action, representing approximately 40% of estimated provable damages;

(3) *In re Tremont Securities Law, State Law, & Insurance Litigation*, No. 08-cv-11117-TPG (S.D.N.Y.), where Entwistle & Cappucci-- again collaborating with the SIPA trustee -- worked to structure and negotiate the resolution of the litigation, securing a $2.9 billion dollar bankruptcy claim, and an additional $100 million settlement;

(4) *In re Allergan, Inc. Proxy Violation Derivatives Litigation*, No. 17-cv-04776 DOC(KESx) (C.D. Cal.), where Entwistle & Cappucci, as Co-Lead Counsel on behalf of investors in derivative securities of Allergan, Inc., negotiated a $40 million settlement of claims that Valeant Pharmaceuticals International, Inc. ("Valeant") and certain officers shared material non-public information with Pershing Square Capital Management, L.P. and certain affiliated individuals and entities concerning Valeant's plan to take over Allergan, Inc. in exchange for Pershing Square's support for the takeover; and

(5) *Shapiro v. JPMorgan Chase, et al.*, No. 11-cv-8331 (S.D.N.Y.), where Entwistle & Cappucci--collaborating with the liquidation trustee for Bernard L. Madoff Investment Securities and the United States Attorneys' Office--worked to structure and negotiate the resolution of claims against JPMorgan Chase & Co. for failure to disclose or report to investors facts related to the Madoff Ponzi scheme, resulting in contemporaneous and related settlements totaling $2.243 billion.

Entwistle & Cappucci was also appointed class counsel for minority investors of Clear Channel Outdoor Holdings, Inc. ("CCOH") in CCOH's separation from controlling stockholder iHeartCommunications, Inc. in connection with the iHeartMedia, Inc. bankruptcy in the Southern District of Texas.  A settlement of the CCOH/iHeart matter was recently approved by both Bankruptcy Judge Marvin Isgur and Chief District Judge Lee Rosenthal, who was enlisted to

review the Rule 23 aspects of the settlement.  The Firm was also appointed as defense liaison counsel in connection with the Tribune Company bankruptcy and related litigation in the Southern District of New York.

## CONCLUSION

For the foregoing reasons, the First New York Group respectfully request that the Court: (1) appoint it to serve as Lead Plaintiff in the Action; (2) approve its selection of Entwistle & Cappucci as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

DATED:  April 1, 2019                             Respectfully submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
(Texas Bar No. 24038131; NY Bar No. AE-6513)
**ENTWISTLE & CAPPUCCI LLP**
500 W. 2nd Street, Suite 1900-16
Austin, TX 78701
Telephone:  (512) 710-5960

299 Park Avenue, 20th Floor
New York, New York 10017
Telephone:  (212) 894-7200

-and-

Robert N. Cappucci
Joshua K. Porter
Andrew M. Sher
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue, 20th Floor
New York, New York 10017
Telephone:  (212) 894-7200

16

*Counsel for FNY Partners Fund LP, FNY Managed Accounts, LLP and Paul J. Burbach and Proposed Lead Counsel for the Class*